IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-00187-02-CR-W-NKL |
| | ) | |
| LUIS HERNANDEZ BAUTISTA, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Pending before the Court is the Government's Appeal of Magistrate's Order Setting Conditions of Release [Doc. # 84]. For the reasons set forth herein, the Appeal is denied.

**I.    Background**

On May 29, 2007, Luis Hernandez-Bautista ("Bautista"), along with several other defendants, was indicted on charges of "conspiring to encourage and induce illegal aliens to reside and remain in the United States for commercial advantage and private financial gain; money laundering; and a notice of criminal forfeiture." (Doc. 84 at 1-2.) In total, Bautista is charged in nine of the indictment's fifteen counts.

On June 15, 2007, Magistrate Judge Sarah W. Hays issued restraining orders against several of Bautista's bank accounts, including his personal checking account and two business accounts. Bautista was arrested on June 18, 2007. On June 21, 2007, Judge Hays presided over Bautista's detention hearing; and, on June 26, 2007, Judge Hays

1

informed counsel of her intention to set a $50,000 surety or cash bond. Judge Hays stated that "once [the bond] has been satisfied, then the Court would meet with Mr. Hernandez-Bautista and set additional conditions." (June 26 Hearing Tr. at 2.)

The next day, at the Government's request, Judge Hays entered an order staying Bautista's release pending this Court's review of Judge Hays's decision.

## II. Bautista's History and the Detention Hearing Testimony

Bautista is a permanent resident of the United States who has created several businesses involved in the roofing industry. The Government alleges that Bautista is known to have contact with coyotes (individuals who are capable of smuggling people into the United States) and that, using these contacts, Bautista conspired to bring illegal aliens to the Untied States for his commercial advantage and financial gain. The Government also alleges that Bautista has received substantial payments from his employer, Mid-Continent Specialist, Inc., d/b/a New Century Roofing.

On March 28, 2001, Bautista and 22 others were arrested and detained by the Immigration and Naturalization Service in Gravois Mills, Missouri. The group had been working on jobs for New Century Roofing near the Lake of the Ozarks. Following his arrest, Bautista posted bond, returned to court as required and was never considered a flight risk. However, the Government alleges that while Bautista was out on bond "he was making arrangements to smuggle the prior deported workers back in, so he was engaging in conduct in violation of the law." (June 21, 2007 Hearing Tr. at 8.)

Bautista has significant family ties in the Kansas City area. He is the primary provider for his four year-old son and is current on all child support payments. Bautista has been employed in the area for the last seven years, owns property in the area and has no criminal history.

## II.     Discussion

The District Court reviews a magistrate judge's detention order *de novo*. *United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985). The purpose of a detention hearing is to determine if a court can impose conditions which would "reasonably assure" the defendant's appearance at all scheduled hearings and "the safety of any other person and the community . . . ." 18 U.S.C. § 3142(e). In this case, the Government argues only that Bautista should be detained because he is a flight risk. The Government does not argue that Bautista's release would negatively affect the safety of the community.

The Government must prove by a preponderance of the evidence that Bautista is a flight risk. *United States v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003). "Perhaps counter-intuitively, the government's evidentiary burden is lesser to prove a flight risk than to prove risk of harm. The statute specifies the burden for risk of harm, clear and convincing, but is silent with regard to flight risk, implying use of the standard used in other pretrial proceedings, preponderance of the evidence." *Id.* at 735, n.3 (citation omitted). Notwithstanding this lower evidentiary burden, "a judicial officer cannot determine that . . . the possible imposition of pretrial detention is appropriate merely by determining that release on personal recognizance will not 'reasonably assure' the

defendant's appearance at trial or 'will endanger' the community. The judicial officer must also consider whether one of the codified conditions[,] [18 U.S.C. § 3142(c),] or any combination of the conditions will 'reasonably assure' the defendant's appearance and the safety of the community. The wide range of restrictions available ensures, as Congress intended, that very few defendants will be subject to pretrial detention." *United States v. Orta*, 760 F.2d 887, 890-91 (8th Cir. 1985) (citations omitted).

In considering whether there are conditions of release that will reasonably assure the defendant's appearance as required, the Court must consider the following four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics (including past conduct); and (4) the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g).

### A. Risk of Flight

#### 1. The Nature and Circumstances of the Offense Charged

Bautista is charged with immigration-related offenses and money laundering offenses, which he claims "arise out of payments allegedly made as compensation to [the workers he allegedly helped enter the country.]" (Doc. 91 at 3.) The Government argues that, in addition to the charges themselves, the Court should consider the consequences faced by the defendant upon conviction. If convicted, Bautista could be sentenced to over 100 years of imprisonment, would lose his permanent resident status and would be deported if he outlives his term of imprisonment. In addition, Bautista could be fined

4

several million dollars if convicted of money laundering and could lose over $6 million dollars and his Kansas City-area residence under the forfeiture count.

For his part, Bautista notes that he has been charged with immigration-related offenses, none of which involve violence of any kind. He argues that he and his companies have always "paid taxes and complied with all relevant employee health and safety requirements." (Doc. 91 at 4.) With respect to the forfeiture count, Bautista argues that "[h]e fully believes he, his family and his employees are entitled to these assets and is currently preparing a strategy to retain them. He recognizes that if he fails to appear, said assets will be forfeited." (Doc. 91 at 4.)

Notwithstanding Bautista's belief that he is entitled to the disputed assets, the nature of the offenses with which he is charged, and the lengthy sentence he may serve if convicted, suggest that he would be a flight risk.

### 2. The Weight of the Evidence

The Government argues that its case against Bautista is "very substantial." According to the Government, the evidence against Bautista includes

> documents relating to the arrest of the defendant and the twenty-two other individuals in March 2001; testimony from witnesses who indicate that Hernandez-Bautista was responsible for securing the unlawful return of these illegal aliens back into the United States; wire transfer records confirming the transfer of money by Hernandez-Bautista to Austin, Texas, as payment for the smuggling into the United States of the deported illegal aliens; voluminous financial records showing millions of dollars in payments from Hernandez-Bautista controlled companies to several of these illegal aliens; and bank and law enforcement surveillance of Hernandez-Bautista and these illegal aliens negotiating checks.

5

(Doc. 84 at 8.)

Bautista argues that the Government's allegations are overstated. And, with respect to the alien transportation counts, Bautista argues that the Government has failed to allege any facts indicating that Bautista or his companies received any financial gains from his employment practices "beyond those typically enjoyed by other individuals in the industry employing subcontractor-laborers." (Doc. 91 at 4.)

For purposes of this Order, the Court does not speculate as to Bautista's guilt or innocence. Instead, the Court must consider whether the Government's evidence is sufficient to put Bautista on notice that he may reasonably be convicted. *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). In this case, the Government's evidence is sufficiently strong to suggest that Bautista may be a flight risk.

### 3. Bautista's History and Personal Characteristics

The Government concedes that many of Bautista's personal characteristics and his history favor his pretrial release. First, Bautista has no known criminal history, drug abuse or alcohol abuse. Second, Bautista has strong ties to the Kansas City area, including a four-year old son and wife, for whom he is the primary provider. Bautista owns property in the area, which he would lose if he fled. And, Bautista has been employed in the area for the last seven years. Finally, while out on bond in 2001, Bautista appeared in Court as he was required and was never a flight risk.

The Government argues that some aspects of Bautista's history caution against his pretrial release. Specifically, the Government argues that Bautista "is known to employ

6

the use of an alias 'Miguel Hernandez' and the evidence supports that he has maintained businesses and bank accounts associated with this alias." (Doc. 84 at 9.) The Government also cites Bautista's alleged involvement in criminal activity while out on bond in 2001 and the fact that he has family in Mexico as reasons for his detention.

Bautista's significant connections to the Kansas City area, as well as his record while out on bond in 2001, weigh in favor of Bautista's pretrial release.

### 4. The Nature and Seriousness of the Danger Posed by Release

The Government concedes that Bautista does not pose a physical danger to the community. Instead, the Government argues that Bautista's release poses two dangers: (1) that his bond will be secured with unlawful proceeds and (2) that he is subject to deportation, thus increasing the risk of flight. As to the Government's first contention, Bautista argues that his "release bond was secured by a[n] interest in a home not currently subject to forfeiture" and that "[n]umerous family members signed said release bond and together were able to present sufficient collateral to secure the bond." (Doc. 91 at 6.) As to the Government's second contention, Bautista argues that his obvious commitment to living and working in the United States demonstrates his desire to defend himself against the Government's charges in an attempt to maintain his current lifestyle.

The Court recognizes that Bautista is incentivized to flee, but finds that Bautista's release would not pose unacceptable dangers to the community.

Given the lengthy sentence that could be imposed on Bautista, the weight of the evidence against him and his past use of an alias, the Court finds that the Government has shown by a preponderance of the evidence that Bautista poses a flight risk.

**B.     Reasonable Assurance that Bautista Will Appear**

Notwithstanding the risk that Bautista may flee, the Court finds that Bautista's personal circumstances, including his family and business interests in the Kansas City area, his lack of criminal history and his past record of adhering to court appointments, weigh heavily in favor of his pretrial release.  Judge Hays implicitly recognized both Bautista's flight risk as well as the circumstances favoring his release when she required him to post a substantial bond, issued restraining orders against several of his bank accounts and contemplated further conditions to reasonably assure his appearance in court.  This Court agrees with Judge Hays's finding that Bautista poses a flight risk, but that his appearance may be reasonably assured by a combination of conditions imposed by the Magistrate.

**III.     Conclusion**

Accordingly, it is hereby

ORDERED that the Government's Appeal of Magistrate's Order Setting Conditions of Release [Doc. # 84] is DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: July 16, 2007
Jefferson City, Missouri